In re AIRLIFT
INTERNATIONAL, INC., Debtor.

William D. SEIDLE, as Trustee for the
Estate of Airlift International,
Inc., Plaintiff,

v.

John Knevett SPICER, an Underwriter
at Lloyd's, London, etc., Defendant.

Bankruptcy No. 81–00846–BKC–SMW.

Adv. No. 87–0322–BKC–SMW–A.

United States Bankruptcy Court,
S.D. Florida.

Dec. 1, 1987.

Bruce J. Berman, P.A., Weil, Gotshal & Manges, Miami, Fla., for plaintiff.

Arthur Brown, Jr., McDonald & McDonald, Miami, Fla., for defendant.

## FINDINGS OF FACT AND CONCLUSIONS OF LAW

SIDNEY M. WEAVER, Bankruptcy Judge.

THIS CAUSE came on before the Court on October 27, 1987 for trial on the issue of damages, upon the Complaint of William D. Seidle, trustee for the Estate of AIRLIFT INTERNATIONAL, INC. ("Airlift"), as an adversary proceeding against John Knevett Spicer (the "defendant") pursuant to Bankruptcy Rule 7001(1) for recovery of compensatory damages for proceeds payable under a policy of insurance and turnover of money to plaintiff pursuant to 11 U.S.C. § 542, and the Court having heard the testimony of the witnesses presented at the damages trial and having observed the candor and demeanor of the witnesses, and being otherwise fully advised in the premises, does hereby make the following Findings of Fact and Conclusions of Law:

On September 23, 1987, the Court entered an order granting the trustee's motion for summary judgment as to the issue of liability, finding that there are no genuine issues of material fact as to coverage and that the applicable insurance policy covers the loss which is the subject of the complaint.

It is uncontested that the defendant issued to the trustee and Airlift, for consideration received by defendant, an Aviation

Spares All Risks Insurance Policy, effective August 1, 1986 to August 1, 1987 (the "Policy"). The Policy insured Airlift's aircraft engines, spare parts and equipment anywhere in the world against all risks of physical loss. In the event of loss, the defendant was responsible for the replacement value of the property insured. All premiums due and payable under the Policy were paid.

The spare parts, which are the subject of the claim under the Policy, were necessary to maintain and service a DC-8-61 aircraft owned by Airlift and chartered to Airline Transport Leasing and Sales, Inc. ("Atlas") for service out of Dhaka airport in Bangladesh. Under the Airlift/Atlas contract, Atlas was required to provide to Airlift a "secure air-conditioned maintenance storage room . . . on the ground level, at Dhaka Airport," during the charter period. Atlas in turn entered into a lease agreement with Biman Bangladesh Airlines ("Biman") for charter of the same aircraft. To assure that Atlas could comply with its obligations to Airlift regarding the local storage of the spare parts, the Atlas/Biman lease required that Biman "provide . . . reasonable storage at [Biman's] home base for . . . storage of [Atlas's] spare parts. . . ."

Airlift sent its aircraft to Dhaka in the summer of 1986 along with certain spare parts, sending additional parts to Dhaka during the course of the charter. In September of 1986, the aircraft was taken for repairs to Shannon, Ireland. The aircraft was never returned to Dhaka to complete the charter. Airlift contended that it had no further responsibility to Atlas because of Atlas's non-payment of monies past due to Airlift. Although the aircraft returned to Miami with some of the spare parts, most of the parts remained in Bangladesh as indicated in Airlift's shipping records.

Airlift representatives attempted to return the remaining spare parts from the storage facility in Dhaka to Miami, but were prevented from doing so by Biman. Biman refused to release the remaining spare parts unless Atlas agreed and unless Biman was paid what it believed was owed by Atlas to Biman under their lease agreement. On September 17, 1986, when it became obvious that Airlift's efforts to obtain Biman's permission to remove the remaining spare parts were futile, Airlift's representatives were recalled to Miami.

The deprivation by Biman of the remaining spare parts belonging to Airlift constituted a loss under the Policy during the period of coverage, entitling Airlift and the trustee, as insureds, to recover the reasonable replacement value of the remaining spare parts at the time of the loss, i.e. on or about September 17, 1986.

Biman's interference with Airlift's right to remove its parts was brought to defendant's attention by mid-October of 1986. Thereafter, defendant engaged Lloyd's Aviation Department to investigate and make every effort to obtain return of Airlift's parts. Those efforts continued for approximately one year, without success.

The Court previously determined, in its ruling on plaintiff's motion for summary judgment, that the loss was covered under the Policy, and that there was no applicable exclusion. Accordingly, the only issue to be determined at trial was the replacement value of the remaining spare parts at the time of the loss.

█ The remaining spare parts were examined by Airlift's maintenance representative shortly before his departure from Dhaka on September 17, 1986, and were in excellent condition at that time, with the exception of used rotables.

The Court has carefully considered the expert testimony and the exhibits presented and finds that the replacement value of the remaining spare parts at the time of the loss was $510,000.00.

Based upon the foregoing, the Court finds:

1. That the trustee is entitled under the insurance policy to recover the replacement value of the insured spare parts at the time of the loss on or about September 17, 1986.

2. That the replacement value of the insured spare parts at the time of the loss was $510,000.00.

3. That the trustee is entitled to recover prejudgment interest in accordance with Florida law at the rate of 12% per annum from the date of the loss, in the amount of $71,400 as of November 17, 1987 and accruing thereafter at $167.67123 per diem. *Argonaut Insurance Company v. May Plumbing Company,* 474 So.2d 212, 215 (Fla.1985); *Tavormina v. Merchants Bank (In re Gillett),* 55 B.R. 675, 680 (Bankr.S.D.Fla.1985); Sec. 687.01 Fla.Stats.

A separate Final Judgment of even date has been entered in conformity herewith.